**In re CAN–ALTA PROPERTIES, LTD., Debtor.**

**CAN–ALTA PROPERTIES, LTD., Appellant,**

v.

**STATE SAVINGS MORTGAGE COMPANY, an Ohio Corporation, Appellee.**

BAP No. AZ–87–2235 JAsV.
Bankruptcy No. B–87–3421–PHX–SSC.
Adv. No. "A".

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Feb. 17, 1988.

Decided July 6, 1988.

Charles W. Lowe, Davis & Lowe, P.C., Phoenix, Ariz., for appellant.

James B. Ball, Phoenix, Ariz., for appellee.

Before JONES, ASHLAND and VOLINN, Bankruptcy Judges.

## OPINION

The Debtor appeals a bankruptcy court order lifting the automatic stay based upon a finding of bad faith. We REVERSE.

## FACTS

On June 8, 1987, the Debtor, Can–Alta Properties, Ltd., filed a petition for relief under Chapter 11 of the Bankruptcy Code. The petition stayed a foreclosure sale scheduled for the same date by the Appellee, State Savings Mortgage Co. ("State Savings"). State Savings was the beneficiary of a deed of trust on real property of the Debtor located in Phoenix, Arizona. The deed of trust secured a promissory note in the amount of $1,750,000, executed by the Debtor on December 2, 1985, in favor of State Savings. The note was due and payable by its terms on December 2, 1986.

The Debtor is an Arizona corporation with two shareholders, George Whissel and David Swan. The real property securing the note is the Debtor's sole asset. The parties agree that the property is worth approximately $2,900,000. The subject real property has been zoned for the development of a commercial office building since October, 1985. State Savings contends that its loan to the Debtor was premised on such zoning and development. The current improvements on the real property are three former church buildings and fourteen residential homes, some of which are rented out on a month-to-month basis. For the first six months of 1987, the real property had net operating income, exclusive of debt service, of $347.34. For the year 1986, the property had a net operating loss, exclusive of debt service.

On June 16, 1987, State Savings filed a motion for relief from the automatic stay. State Savings argued that the stay should be lifted "for cause" pursuant to section 362(d)(1) because the Debtor was proceeding in bad faith and because State Savings was not adequately protected. Alternatively, State Savings argued that the stay should be lifted pursuant to section 362(d)(2), because there was no equity in the property and the property was not necessary for an effective reorganization.

The court held three days of evidentiary hearings on State Savings' motion to lift stay. At the July 15, 1987 preliminary hearing, the bankruptcy judge gave the Debtor until July 27, 1987 "to convince [her] that [she] should leave [the stay] in place." Some time prior to the July 27, 1987 hearing, the Debtor received an offer to purchase the property. The offer was never reduced to contract. On September 22, 1987, Debtor's counsel informed the court that the offer to purchase had been withdrawn and that no other offers to purchase the property had been received. As of September 22, 1987, the total amount owed to State Savings by the Debtor was $2,029,456.14.

The final lift stay hearing was held on September 29, 1987. At that hearing, the court concluded that there was equity in the property, but took under submission the issue of whether the petition had been filed in bad faith. On September 30, 1987, the Debtor filed a disclosure statement and

a plan. On December 7, 1987, a hearing was held on the Debtor's disclosure statement. At that hearing, the bankruptcy judge asked the Debtor's attorney if the status of the case had changed since the final lift stay hearing. The Debtor's attorney informed the judge that, to his knowledge, the Debtor had not made any progress in refinancing or selling the property. The bankruptcy judge then ordered that the stay be lifted on the ground that the Debtor was proceeding in bad faith. The Debtor timely appealed.

### STANDARD OF REVIEW

■■■ A finding of bad faith is a factual determination and is reviewed under the clearly erroneous standard. *See, e.g., In re Thirtieth Place, Inc.*, 30 B.R. 503, 506 (9th Cir. BAP 1983); *Matter of Little Creek Development Co.*, 779 F.2d 1068, 1073 (5th Cir.1986). An order lifting the automatic stay is reviewed for an abuse of discretion. *In re Castlerock Properties*, 781 F.2d 159, 163 (9th Cir.1986).

### DISCUSSION

The standards for relief set forth in 11 U.S.C. sections 362(d)(1) and (d)(2) are independant and alternative. Accordingly, relief may be granted "for cause" under subsection 362(d)(1), despite the existence of equity in the collateral, which would preclude relief from the stay under 11 U.S.C. section 362(d)(2). *See, e.g., In re Fry Road Associates, Ltd.*, 66 B.R. 602 (Bankr.W.D. Tex.1986). It is well established that a lack of good faith constitutes "cause" for lifting the stay to permit foreclosure or for dismissing the case. *See In re Arnold*, 806 F.2d 937, 939 (9th Cir.1986). *See also Little Creek*, 779 F.2d at 1072 and cases cited therein; *Thirtieth Place*, 30 B.R. at 505.

"Findings of lack of good faith in proceedings based upon section 362(d) or 1112(b) have been predicated on certain recurring but non-exclusive patterns, and they are based on a conglomerate of factors rather than on any single datum." *Little Creek*, 779 F.2d at 1072. *Accord Arnold*, 806 F.2d at 939 (the existence of good faith depends upon an amalgam of

factors and not upon a specific fact). In *Little Creek*, the Fifth Circuit identified ten common conditions which usually exist in bad faith cases:

The debtor has one asset, such as a tract of undeveloped or developed real property. The secured creditors' liens encumber this tract. There are generally no employees except for the principals, little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments pursuant to 11 U.S.C. sections 361, 362(d)(1), 363(e), or 364(d)(1). Typically, there are only a few, if any, unsecured creditors whose claims are relatively small. The property has usually been posted for foreclosure because of arrearages on the debt and the debtor has been unsuccessful in defending actions against foreclosure in state court. Alternatively, the debtor and one creditor may have proceeded to a standstill in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford. Bankruptcy offers the only possibility of forestalling loss of the property. There are sometimes allegations of wrongdoing by the debtor or its principals. The "new debtor syndrome" in which a one-asset entity is created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors, exemplifies, although it does not uniquely categorize, bad faith cases.

*Little Creek*, 779 F.2d at 1073 (footnote omitted). Not all of the factors listed are necessary to a finding of bad faith. *Id.* at 1072, 1073. *See also In re Southern California Sound Systems, Inc.*, 69 B.R. 893 (Bankr.S.D.Cal.1987) (dismissing Chapter 11 proceeding where only four of the factors listed in *Little Creek* were present).

In support of its conclusion that the Debtor was proceeding in bad faith, the bankruptcy court made the following findings:

1) this is a single asset Chapter 11;

2) there is no real operation of the property underway, although some of the

homes and one of the church properties have been rented;

3) the maximum anticipated monthly gross income from the rental of the homes and the churches would be between $5,000 to $8,000 per month and the Debtor has not yet met those projections;

4) no construction financing on the property has been obtained, nor has Mr. Whissel made any attempt to obtain refinancing;

5) although one offer to purchase the property was received by the Debtor, no offers to purchase the property are currently before the court;

6) there are only seven unsecured creditors of which only three are unrelated to the Debtor: the three unrelated unsecured creditor's claims total approximately $30,000; the major unsecured creditor is a shareholder of the corporation, who is owed a combination of capital and debt totaling $425,000;

7) other than a property manager retained by the Debtor, the Debtor has essentially no employees;

8) the bankruptcy petition was filed on the date of the trustee's sale; one of the reasons the bankruptcy was filed was to forestall the foreclosure;

9) Mr. Whissell's testimony that the bankruptcy was filed as a way to eventually sell the property lacks credibility given the little activity that has been taken to move these proceedings along; Mr. Whissell presented no evidence on what he was doing to either refinance or sell the property;

10) Mr. Whissell has not contacted any financial institutions regarding refinancing or construction financing;

11) there have been no capital contributions from the shareholders, nor any loans made to the corporation since the filing of the bankruptcy;

12) Mr. Whissell has not obtained any building permits;

13) the purpose of this Chapter 11 is to preserve the investment of the shareholders;

14) the Debtor did not have the funds to pay to extend the loan agreement;

15) the interest rate that would be paid to State Savings under the proposed plan of reorganization is less than three percent (3%) per annum;

16) the proposed plan of reorganization cannot be confirmed; and

17) there is no evidence that there is really a good faith effort to reorganize.

The Debtor argues that the bankruptcy court erred in concluding that the stay should be lifted on the basis of bad faith. Although the Debtor concedes the accuracy of most of the court's individual findings of fact, the Debtor argues that the record, taken as a whole, does not support the court's conclusion of bad faith. We agree.

■ We recognize that some of the indicia of bad faith are present in this case. However, other factors exist which lead us to conclude that the bankruptcy court abused its discretion in lifting the stay on the basis of bad faith. Importantly, this Debtor was not formed on the eve of bankruptcy as was the case in both *Little Creek* and *Thirtieth Place*. Furthermore, the Debtor has approximately one million dollars in equity in the subject real property which it should be given the reasonable opportunity to protect. Moreover, the bankruptcy petition in this case was filed only six months prior to the order lifting the stay. That the Debtor received only one offer to purchase the property since the filing of the case is not surprising in light of the great value of the property. Given the complications incident to a refinancing or sale of this magnitude, the bankruptcy court abused its discretion in concluding that the Debtor's failure in this regard justified the lifting of the stay.

■ Finally, the bankruptcy court indicated that one reason for its order lifting the stay was that the proposed plan was unconfirmable. The court was rightly concerned with the fact that the payments to State Savings under the plan were not sufficient to cover accruing interest, and that the plan placed all the risk on State Savings. However, the stay was lifted prior to

the hearing on the plan. No evidence regarding confirmability or feasibility was presented to the court. Accordingly, the Debtor had no opportunity to amend the plan consistent with the court's concerns. This would appear to be an abuse of discretion.

We do not mean to suggest that this Debtor be given an unlimited period of time in which to propose a confirmable plan. Nor do we mean to create a *per se* rule that six months is too short a period in which to lift a stay when an estate is large and the debtor has substantial equity in the estate. Here, however, the Debtor was not given a reasonable opportunity to propose a confirmable plan. Under these circumstances, the stay should not have been lifted on the basis of bad faith.

For the foregoing reasons, we REVERSE and REMAND for further proceedings consistent with this memorandum.