In re Lauren D. WALTER, and Jeannette B. Walter, Debtors.

Bankruptcy No. LA–89–03890.

United States Bankruptcy Court, C.D. California.

Nov. 22, 1989.

Ellen M. Zuckerman and Ira Benjamin Katz, Weiss & Katz, P.C., Los Angeles, Cal., for creditors.

Joseph M. Sholder, Michaelson, Susi & Michaelson, Santa Barbara, Cal., for debtors.

OPINION RE ORDER GRANTING DISMISSAL PURSUANT TO 11 U.S.C. § 1112(b) AND 11 U.S.C. § 305(A)(1) ON THE GROUND OF "BAD FAITH"

KATHLEEN P. MARCH, Bankruptcy Judge.

## I.

### STATEMENT OF FACTS

In this contested matter, Richard Tait, the Frank M. Tait Children's Trust and the Frank M. Tait Marital Trust (herein collectively referred to as "Tait") seek an order dismissing the bankruptcy petition of Lauren D. and Jeannette B. Walter (herein collectively referred to as "Debtors") for "cause" pursuant to 11 U.S.C. § 1112(b) on the ground that Debtors' petition was filed in "bad faith." Alternatively, Tait seeks an order dismissing Debtors' bankruptcy petition pursuant to 11 U.S.C. § 305(a)(1) on the ground that "the interests of creditors and the debtor would be better served by such dismissal." [1]

Debtors filed bankruptcy for the purpose of staying Tait, this estate's only secured creditor, from foreclosing on Debtors' asset, a parcel of real property located in Santa Barbara County, California, valued at $430,000.[2] Debtors hold this property subject to a $100,000.00 fully matured promissory note and deed of trust in favor of Tait. Debtors have not made any payments on this note; consequently, the note balance is presently over $200,000.00, including principal, interest, and attorney fees.

As a result of Debtors' failure to payoff their obligation, on October 14, 1987, Tait recorded a Notice of Default against the property in question. Instead of seeking the protection of the bankruptcy court or attempting to refinance the property [3],

---

1. Some bankruptcy court decisions refer to 11 U.S.C. § 305 dismissal as "case abstention." *In re Covey,* 650 F.2d 877 (7th Cir.1981); *In re Cash Exchange, Inc.,* 762 F.2d 542 (7th Cir.1985).

2. Note, Debtors' schedules list the property as having a fair market value of $425,000.00; however, a recent appraisal by the County Tax Ac-

cessors estimates the property's fair market value at $430,000.00.

3. Debtors have approximately $250,000.00 in equity in the Santa Barbara property, over and above the equity liened by the Tait lien.

Debtors filed an action in the Santa Barbara County Superior Court against Tait, alleging Accounting, Fraud, Breach of Fiduciary Duty, Breach of the Implied Covenant of Good Faith and Fair Dealing, Rescission, Declaratory Relief and Injunction. Subsequently, Debtors moved the Santa Barbara Superior Court for a preliminary injunction. The Superior Court denied Debtors' motion on March 8, 1988.

After failing to obtain the preliminary injunction, Debtors attempted to refinance the Tait note, pending the resolution of the state court litigation. Debtors applied for a replacement loan and obtained a loan commitment. However, after obtaining the loan commitment, Debtors apparently had a change of heart, because they did not complete the refinancing. Instead of concluding their refinancing efforts, Debtors attempted to further postpone payment on the Tait note by appealing the trial court's order denying their request for a preliminary injunction and by petitioning the California Court of Appeal for an emergency stay pending appeal. The Court of Appeal issued an emergency stay, providing Debtors some temporary relief. Thereafter, on January 20, 1989, the Court of Appeal issued a written opinion affirming the denial of the preliminary injunction by the trial court. Tait then re-noticed the Trustee Sale of Debtors' Santa Barbara property for February 28, 1989.

On February 24, 1989, having waived their opportunity to appeal the Court of Appeal's decision to the California Supreme Court, Debtors filed bankruptcy. Debtors admitted in their testimony at the First Meeting of Creditors that they had filed their present bankruptcy petition for the purposes of staying the Tait foreclosure. Debtors further testified that they had no intention of filing a plan of reorganization until after the state court litigation was concluded.

While opposing the motion, Debtors failed in their Opposition to submit any evidence as to what, if anything, Debtors intend to do by way of reorganizing their financial affairs. Debtors are not operating a business; consequently, they have no employees. Debtors are in fact retired. Moreover, Debtors failed to submit any evidence that they are either interested in or capable of coming out of retirement to generate any income in addition to their present monthly income. Debtors present joint monthly income is approximately $2,443.80 per month, which is insufficient to fund a plan of reorganization. This income consists of Social Security and pension payments totaling $2,043.80 per month and $400.00 a month that Mrs. Walter earns working part time. However, Debtors' Schedules and Statement of Affairs reflects that Debtors have $404,961.41 more in assets ($544,063.80) than liabilities ($140,102.39). However, this amount must be discounted to approximately $304,961.41, to reflect the additional liabilities of $100,000 incurred as a result of the unpaid principal, interest and attorney fees regarding the disputed note. It should be noted that Debtors failed to submit any evidence that an alternate method of reorganizing this estate existed other than by refinancing the Tait note. Notwithstanding, the record reflects that Debtors passed up at least one opportunity to refinance the Tait note and that Debtors are not presenting looking for a replacement loan.

## II.

### STATEMENT OF ISSUES

1. Whether Debtors' bankruptcy petition should be dismissed for "cause," pursuant to 11 U.S.C. § 1112(b), on the ground that Debtors' petition was filed in "bad faith."

2. Whether Debtors' bankruptcy petition should be dismissed, pursuant to 11 U.S.C. § 305(a)(1), on the ground that "the interests of creditors and the debtors would be better served by such dismissal. . . .".

## III.

### ANALYSIS

A. Debtors' Bankruptcy Petition Should be Dismissed for "cause" Pursuant to 11 U.S.C. § 1112(b) on the Ground

that Debtors' Petition was Filed in "Bad Faith."

Tait seeks an order dismissing Debtor's bankruptcy petition for "cause" pursuant to Bankruptcy Code § 1112(b) on the ground that Debtor's petition was filed in "bad faith". Section 1112(b) provides, in pertinent part that,

> "... on request of a party in interest ... and after notice and a hearing, the court may ... *dismiss* a case under this chapter ... *for cause* ..." *11 U.S.C. 1112(b)* (emphasis added).

It is well established law in the Ninth Circuit, as well as in various other circuits, that lack of "good faith," or existence of "bad faith" in commencing and/or prosecuting a bankruptcy case, constitutes "cause" for either dismissing the bankruptcy case pursuant to Section 1112(b) or for granting relief from stay pursuant to 11 U.S.C. § 362(d). *See In re Arnold*, 806 F.2d 937, 939 (9th Cir.1986); *In re Can–Alta Properties, Ltd.*, 87 B.R. 89, 91 (9th Cir. BAP 1988); *In re Stolrow's Inc.*, 84 B.R. 167, 170 (9th Cir.BAP 1988); *In re Southern California Sound Systems, Inc.*, 69 B.R. 893, 899 (Bankr.S.D.Cal.1987); *See also Matter of Little Creek Development Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986).

What constitutes lack of good faith? "Findings of lack of good faith in proceedings based upon section 362(d) or 1112(b) have been predicated on certain recurring but non-exclusive patterns, and they are based on a conglomerate of factors rather than on any single datum." *In re Can–Alta Properties, Ltd.*, 87 B.R. 89, 91 (9th Cir. BAP 1988), quoting *Matter of Little Creek Development Co.*, 779 F.2d 1068, 1072 (5th Cir.1986). The leading case identifying factors demonstrating bad faith is *Matter of Little Creek Development Co.*, 779 F.2d 1068, 1072 (5th Cir.1986), which has been cited with approval by the Ninth Circuit in *In re Arnold*, 806 F.2d 937, 939 (9th Cir.1986), and recently adopted in *In re*

*Can–Alta Properties, Ltd.*, 87 B.R. 89, 91 (9th Cir. BAP 1988) and *In re Stolrow's Inc.*, 84 B.R. 167, 171 (9th Cir. BAP 1988). The United States Bankruptcy Appellate Panel of the Ninth Circuit, in *In re Can–Alta Properties, Ltd.*, reaffirmed the ten common conditions identified in *Little Creek* which indicate bad faith as the following: [4]

> "(1) The Debtor has one asset, such as a tract of undeveloped or developed real property. (2) The secured creditor's liens encumber this tract. (3) There are generally no employees except for the principals, (4) little or no cash flow, and no available sources of income to sustain a plan of reorganization or adequate protection payments pursuant to 11 U.S.C. sections 361, 362(d)(1), 363(e), or 364(d)(1). (5) Typically, there are only a few, if any, unsecured creditors whose claims are relatively small. (6) The property has usually been posted for foreclosure because of arrearage on the debt and the debtor has been unsuccessful in defending actions against foreclosure in state court. (7) Alternatively, the debtor and one creditor may have proceeded to a standstill in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford. (8) Bankruptcy offers the only possibility of forestalling loss of the property. (9) There are sometimes allegations of wrongdoing by the debtor or its principals. (10) The 'new debtor syndrome' in which a one-asset entity is created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors, exemplifies, although it does not uniquely categorize, bad faith cases." *Matter of Little Creek Development Co.*, 779 F.2d 1068, 1073 (5th Cir.1986) (footnote omitted) (numbers added).

The relevant cases emphasize that not all of the factors listed are necessary to find bad faith. *In re Can–Alta Properties,*

---

**4.** In *In re Can–Alta Properties, LTD*, 87 B.R. 89 (9th Cir. BAP 1988), the Ninth Circuit Bankruptcy Appellate Panel held that the Bankruptcy Court properly found the requisite bad faith factors present, however, based on procedural

grounds, reversed the Bankruptcy Court's order lifting the stay, because reasonable opportunity to purpose a confirmable plan was not adequately provided.

*Ltd.,* 87 B.R. 89, 91 (9th Cir. BAP 1988); *Matter of Little Creek Development Co.,* 779 F.2d 1068, 1072, 1073 (5th Cir.1986); *See also, In re Southern California Sound Systems, Inc.,* 69 B.R. 893 (Bankr.S. D.Cal 1987) (dismissing Chapter 11 proceeding where only four of the factors listed in *Little Creek* were present).

■ Whether a Chapter 11 Petition should be dismissed for a lack of good faith where the debtor's actions are a clear abuse of the bankruptcy process is within the Bankruptcy Court's discretion. *In re Arnold,* 806 F.2d 937, 939 (9th Cir.1986). *In re Stolrow's Inc.,* 84 B.R. 167, 170 (9th Cir. BAP 1988); *In re Universal Clearing House Co.,* 60 B.R. 985, 993 (D.Utah 1986).

■ After applying the *Little Creek* factors to the case at bar, with the understanding that in the Ninth Circuit not all factors need to be present to sustain a finding of bad faith, this Court finds that "cause" exists for dismissing Debtors' bankruptcy petition pursuant to section 1112(b) on the ground that Debtors' bankruptcy petition was filed in bad faith. Specifically, this Court finds that,

1. Debtors' sole asset is parcel of real property located in Santa Barbara County.

2. Tait is the only secured creditor of this bankruptcy estate.

3. The Debtors have no employees.

4. Debtors are not operating a business.

5. Debtors' joint monthly income of $2,443.00 is inadequate to sustain a plan or reorganization.

6. Debtors have no intention of refinancing the Tait note. Debtors passed up one loan commitment and Debtors are not actively seeking a replacement loan.

7. Debtors have no intention of filing a plan of reorganization until after the state court litigation regarding the Tait note is resolved.

8. Debtors and their major creditor Tait have proceeded to a standstill in state court litigation, and the Debtors have failed to obtain a preliminary injunction enjoining foreclosure from the state court.

9. Debtors have relatively few unsecured creditors, whose unsecured debts only total $32,642.39, a small amount when compared to the amount of equity Debtors have in the property.

10. Debtors assets exceed their liabilities so much so that sufficient equity exists for creditors to be paid 100% of their claims outside of bankruptcy.

11. Debtors admittedly filed their bankruptcy petition for the sole purpose of utilizing the "automatic stay" of Title 11 in lieu of the "preliminary injunction" the state court refused to grant, as means of enjoining Tait from proceeding with nonjudicial foreclosure proceeding as to the Santa Barbara Property. Debtors concede in their Opposition to Tait's motion to dismiss that:

> "This bankruptcy case was precipitated by the imminent foreclosure sale on the Walters' real property sought by movant. The Walters filed this [bankruptcy] case in order to stop this foreclosure sale. (See Walter Deposition at 5:14–15, 8:15–18, 45:25–46:3). Prior to the bankruptcy filing, the Walters had been unable to obtain an injunction against this sale from the state trial court or court of appeal." (Debtor's Opposition, p. 4, 11. 9–15).

■ On the facts just enumerated Debtors' attempt to use of the "automatic stay" of Title 11 as a replacement for the unavailable state court "preliminary injunction", after opting to litigation their dispute with Tait in a state court forum (and failing to obtain relief in that forum), is an impermissible use of the bankruptcy process.

In opposing the motion, Debtors argue that the Ninth Circuit holds that it is not bad faith (1) for individual debtors not engaged in business to avail themselves of the protection of Chapter 11 in order to save their residence, and (2) to file a bankruptcy to stop an impending foreclosure sale in order to salvage equity in real property. *In re Arnold,* 806 F.2d 937, 939 (9th Cir.1986); *In re Chisum,* 68 B.R. 471 (9th Cir. BAP 1986), *aff'd on other grounds,* 847 F.2d 597 (9th Cir.1988) (no abuse of discretion permitting bankruptcy petition to

avoid foreclosure on family home, if undertaken pursuant to a legitimate effort to reorganize); *In re Warner*, 30 B.R. 528 (9th Cir. BAP 1983) (abuse of discretion prohibiting the use of Chapter 11 to avoid foreclosure of family home for failing to effectuate a reorganization plan, where improper notice and hearing of dismissal given).

Debtors, however, failure to recognize that the salient feature in each of these three cases is the condition that the Debtor take affirmative action to put forth and implement an effective plan for reorganization. In *In re Arnold*, 806 F.2d 937, 939 (9th Cir.1986), the Ninth Circuit Court of Appeals reversed the District Court's order lifting the stay based upon a bad faith filing, because the Debtors had submitted an effective reorganization plan which substantially complied with the Bankruptcy code, allowing the land in question to be used productively to repay the creditors while the stay was in place. In *In re Chisum*, 68 B.R. 471, 472 (9th Cir. BAP 1986), *aff'd on other grounds*, 847 F.2d 597 (9th Cir.1988), the Ninth Circuit Bankruptcy Appellate Panel upheld the Bankruptcy Court's determination that Debtor's filing of successive bankruptcy petitions to prevent foreclosure of his family home was not bad faith, because the repeated filings were in an effort to "legitimately reorganize." And *In re Warner*, 30 B.R. 528, 529 (9th Cir. BAP 1983), the Bankruptcy Appellate Panel noted by way of dictum, in a case where debtor had already proposed a plan of reorganization, that Chapter 11 was a proper vehicle for preserving "minimal equity" in real property. In each of these case, the parties in bankruptcy were either in the process of formulating a plan or had already filed a plan.

In contrast, Debtors in the case at bar have made no effort to formulate a plan of reorganization. Furthermore, Debtors have openly declared (at their Bankruptcy Rule 2004 Examination and in their Opposition papers) that they have no intention of formulating a plan of reorganization until

after the state court litigation regarding the Tait note has concluded. Given that civil cases pending in California Superior Courts often take five years to come to trial (not counting time for appeal after trial), the state court litigation may not be concluded for years.

Since Debtors do not have a substantial income stream, the only feasible methods of reorganizing this estate would be to refinance the Tait note pending resolution of the state court litigation, or to implement a liquidating plan by selling the property.[5] Debtors, however, flatly rejected the refinancing option which was available to them before they filed for bankruptcy. Debtors do not even claim to be seeking a replacement loan at present. Further, there is no evidence that Debtors have or are seeking to sell the property, as would be necessary for a liquidating plan. In short, Debtors have no intention of formulating a "feasible" plan of reorganization at anytime in the foreseeable future. This distinguishes the instant case from *Arnold*, *Chisum* and *Warner*, which all involved legitimate efforts by debtors to formulate plans of reorganization.

The present case has similarities to, but is more egregious than *In re Schlangen*, 91 B.R. 834, 838, 893 (Bankr.N.D.Ill.1988). In *Schlangen* foreclosure procedures on Debtor's five properties were proceeding in state court. Debtor first opposed the foreclosure proceedings in state court. Next, Debtor filed a bankruptcy petition, and brought an adversary proceeding against her secured creditor, Horizon, alleging, *inter alia*, that Horizon had improperly declared defaults on her loans. The Bankruptcy Court found that this adversary proceeding could have been brought as a cross-complaint in the state court action; that it was a state court cause of action where there was federal jurisdiction solely because of the filing of the bankruptcy petition; and that Debtor had no realistic likelihood of effecting a plan of reorganiza-

---

5. Debtors failed to submit any evidence suggesting that some other plan reorganization was possible or contemplated.

tion. The Bankruptcy Court dismissed the petition for bad faith, finding that:

> "The Chapter 11 petition was filed in July 1986 *to confer federal jurisdiction on what is otherwise a two-party dispute involving state law issues* and to invoke the benefits of the automatic stay to protect her real estate interests. Upon the modification of that stay, jurisdiction over the Debtor's five real estate holdings effectively passed to the state courts, and four of those properties have been sold. There is no likelihood that this case will result in the rehabilitation of the Debtor's business or the orderly liquidation of her remaining assets. The only present purpose being served by this case is to provide a basis for federal jurisdiction over the Horizon lawsuit [referring to the adversary proceeding by Debtor against secured creditor Horizon]. *Absent some legitimate reorganization objective achievable in a Chapter 11 case (which might include the orderly liquidation of assets), Chapter 11 cannot be used merely to provide a federal forum for a lawsuit.* Since no such objective is achievable here, Horizon's motion to dismiss the Debtor's Chapter 11 case 'for cause' is granted". (Emphasis added.) 91 B.R. at 839.

As was the case in *Schlangen*, Debtors' filing of their bankruptcy petition in the instant case is at bottom forum shopping, carried on after Debtors sought but failed to obtain relief against their secured creditor from state court.

The dispute between Debtors and their creditor Tait is a state court foreclosure/fraud dispute, which Debtors initially elected to litigate in state court. When the state court denied Debtors' motion for preliminary injunction, Debtors appealed this denial to the California Court of Appeal. When the California Court of Appeal denied Debtors' request for prelimi-

nary injunction, Debtors filed a bankruptcy petition, rather than appealing to the California Supreme Court. Debtors admit their sole purpose in doing so was to obtain, by operation of the automatic stay, the preliminary injunction which they had failed to obtain in state court. The bankruptcy petition was therefore a forum shopping device, filed to obtain the equivalent of a preliminary injunction from federal court, after being denied a preliminary injunction in state court. This course of conduct constitutes a "bad faith" use of the bankruptcy process, for which dismissal is the proper remedy.

> B. Debtor's bankruptcy petition should be dismissed pursuant to 11 U.S.C. § 305(a)(1), on the ground that "the interests of creditors and the debtor would be better served by dismissal....".

■ In the alternative, Tait seeks an order dismissing Debtors' bankruptcy petition pursuant to 11 U.S.C. § 305(a)(1), on the ground that the interests of creditors and the debtor would be better served by dismissal. Bankruptcy Code § 305(a)(1), provides in pertinent part that,

> "The court, after notice and a hearing, may dismiss a case under this title, at any time if ... the interests of creditors and the debtor would be better served by such dismissal ..." *11 U.S.C. section 305(a)(1)*

In adopting Section 305, Congress recognized that "there are certain instances where it may be appropriate for [Bankruptcy Courts] to decline jurisdiction" by dismissing a bankruptcy petition.[6] (i.e., "case abstention")[7] Notes of committee on the Judiciary Senate Report No. 95–989, U.S. Code Cong. & Admin.News 1978, p. 5821.

In this case, this Court finds that "the best interest of creditors and the Debtors would be better served by such dismissal."

---

6. Once the Bankruptcy Court determines it has jurisdiction, the decision whether to abstain from the case becomes, without exception, an unreviewable exercise of discretion. 11 U.S.C. § 305(c); *Cash Currency Exchange, Inc. v. Shine, (In re Cash Currency Exchange, Inc.)*, 762 F.2d 542, 545, 12 C.B.C.2d 1499 (7th Cir.), *cert.*

*denied,* 474 U.S. 904, 106 S.Ct. 233, 88 L.Ed.2d 232 (1985); H.R.Rep. No. 95–598, 95th Cong., 1st Sess. 325 (1977); S.Rep. No. 95–989, 95th Cong., 2d Sess. 35 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787.

7. See, supra footnote 1.

11 U.S.C. § 305(a)(1). First, dismissal would be in the best interest of creditors because the Debtors have sufficient assets to pay off all their creditors in full and creditors would be paid in a more expedited basis outside of bankruptcy. With respect to secured creditors, the state court has already determined that Tait, this estate's only secured creditor, should not be enjoined from foreclosing his interest in Debtor's parcel of real property. Tait should not be compelled to re-litigate this issue in a bankruptcy proceeding in the context of a motion for relief from stay pursuant to section 362(d). As to unsecured creditors, this court finds that the claims of all the unsecured creditors could have be paid when they came due if the Debtors had not filed for bankruptcy, since Debtors have a net worth far exceeding the amount of these claims. Second, the interest of Debtors would be better served by a dismissal given that Debtors have sufficient equity in the subject real property to refinance the Tait note, pending the outcome of the state court litigation, without incurring the astronomical cost of administering a Chapter 11 case. The transaction cost of refinancing the Tait note will be far greater if Debtors refinance pursuant to a Chapter 11 plan rather than outside of bankruptcy. Simply put, Debtors do not need a staff of bankruptcy lawyers (and the high cost associated with retaining specialty counsel) to assist them in preparing a loan application. Debtors have already shown they are capable of securing a replacement loan all by themselves.

### IV.

#### Conclusion

This Court finds that Debtors' bankruptcy petition should be dismissed for cause under 11 U.S.C. § 1112(b), on the ground that Debtors' petition was filed in "bad faith". Alternatively, this Court dismisses this case pursuant to 11 U.S.C. § 305(a)(1), on the ground that "the interests of creditors and the debtor[s] would be better served by dismissal." This Court, however, is sympathetic to Debtors' need for sufficient time to secure a replacement loan for the Tait note, or to sell the property. Consequently, as an accommodation to Debtors, this Court will not enter its order of dismissal until sixty days after the date that the hearing was held on Tait's Motion to Dismiss (the Court having announced its ruling orally from the bench at that hearing).

This opinion constitutes this Court's findings of fact and conclusions of law.