83 F.3d 428
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
In re S & S/MOAB ENTERPRISES Debtor.
FRYER/McELHANEY JOINT VENTURE, Movant-Appellee,
v.
S & S/MOAB ENTERPRISES, Respondent-Appellant.
 No. 95-55038.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted April 9, 1996.
Decided April 25, 1996.
 
 1
 Before: O'SCANNLAIN and TROTT, Circuit Judges, and VAN SICKLE, District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 We affirm the BAP's affirmance of the bankruptcy court's order dismissing S & S/Moab Enterprises's ("S & S") Chapter 11 case for bad faith and lifting the automatic stay retroactively to the time of filing. § 1112(b); § 362(d).[1]
 
 
 4
 On appeal to this court, S & S argues: 1) this court should eliminate the judicially-inferred Chapter 11 good faith filing requirement; 2) the bankruptcy court clearly erred in making the findings underlying the court's ultimate factual conclusion of bad faith; 3) the finding of bad faith was, in any event, a clear error; and 4) the bankruptcy court abused its discretion by lifting the stay and dismissing the case before S & S had a reasonable opportunity to present a confirmable plan to protect its equity. None of these arguments succeed.
 
 
 5
 * S & S's first argument ignores In re Marsch, 36 F.3d 825, 828 (9th Cir.1994), in which this court reaffirmed its adherence to the rule "that a lack of good faith in filing a Chapter 11 petition establishes cause for dismissal." The good faith requirement is the law of this circuit; S & S is stuck with it.
 
 II
 
 6
 With regard to the second argument, S & S contended in its brief that: 1) the bankruptcy court clearly erred in finding that no partnership existed prior to filing; 2) it erred in finding that S & S's sole purported asset, an orchard in Moab, was not part of the estate at filing; 3) it clearly erred in finding that S & S had no unsecured creditors at filing; and 4) it clearly erred in finding that S & S had no ongoing business, no capacity to produce a profit, no income, and lacked cash flow to pay its debts.
 
 
 7
 At oral argument, S & S conceded that the partnership did not exist until the date of filing. In light of this concession, we cannot say the bankruptcy court clearly erred with regard to the date of formation of the partnership or in concluding that the Moab property was not part of S & S's estate at filing.
 
 
 8
 The bankruptcy court did not clearly err in finding that S & S had no unsecured creditors at filing. S & S does not cite to anything in the record indicating that its architect and construction consultants had earned any right to payment by the date of filing. Without such a right, they were not prepetition creditors. § 101(10); In re Battinelli, 169 B.R. 522, 525 (Bankr.E.D.N.Y.1994).
 
 
 9
 Further, we cannot say the bankruptcy court clearly erred in finding that S & S had no ongoing business, lacked capacity to produce a profit, etc. Certainly, this was a fair description of S & S at the time of filing as described by its own bankruptcy schedules. S & S, however, contends that the bankruptcy court's findings are clearly erroneous because they did not take into account S & S's plans to develop the property. We are somewhat troubled by the bankruptcy court's lack of explicit discussion of this matter. S & S presented evidence that it had hired a construction consultant who prepared a feasibility study showing that a motel built on the Moab property would be quite profitable. It also hired an architect to draw preliminary plans and began discussions with the city of Moab concerning zoning. We agree with the BAP, however, that this evidence indicates the project was still at a speculative stage. Therefore, we cannot say that the bankruptcy court's findings on S & S's health as a business were clearly erroneous.
 
 III
 
 10
 The bankruptcy court did not clearly err when it found that S & S filed for Chapter 11 in bad faith, which provided cause both for lifting the automatic stay under § 362(d), In re Arnold, 806 F.2d 937, 939 (9th Cir.1986), and for dismissal of the Chapter 11 case under § 1112(b). In re Marsch, 36 F.3d 825, 828 (9th Cir.1994).
 
 
 11
 "The existence of good faith depends on an amalgam of factors and not upon a specific fact. The test is whether a debtor is attempting to deter and harass creditors or attempting a speedy, efficient reorganization on a feasible basis." Marsch, 36 F.3d at 828. Once a movant establishes the existence of a genuine issue concerning the debtor's lack of good faith, the debtor then bears the burden of proving good faith by a preponderance of the evidence. See In re Setzer, 47 B.R. 340, 345 (Bankr.E.D.N.Y.1985); In re Yukon Enterprises, 39 B.R. 919, 921-22 (Bankr.C.D.Cal.1984); In re Spenard Ventures, Inc., 18 B.R. 164, 166 (Bankr.D.Alaska 1982).
 
 
 12
 To aid them in their inquiry, courts have fashioned lists of factors typically present in bad faith filings, perhaps the most influential being the following from Matter of Little Creek Development Co.:
 
 
 13
 Several, but not all, of the following conditions usually exist. The debtor has one asset, such as a tract of undeveloped or developed real property. The secured creditors' liens encumber this tract. There are generally no employees except for the principals, little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments pursuant to 11 U.S.C. §§ 361, 362(d)(1), 363(e), or 364(d)(1). Typically, there are only a few, if any, unsecured creditors whose claims are relatively small. The property has usually been posted for foreclosure because of arrearages on the debt and the debtor has been unsuccessful in defending actions against the foreclosure in state court. Alternatively, the debtor and one creditor may have proceeded to a stand-still in state court litigation, and the debtor has lost or has been required to post a bond which it cannot afford. Bankruptcy offers the only possibility of forestalling loss of the property. There are sometimes allegations of wrongdoing by the debtor or its principals. The "new debtor syndrome," in which a one-asset entity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors, exemplifies, although it does not uniquely categorize, bad faith cases.
 
 
 14
 Resort to the protection of the bankruptcy laws is not proper under these circumstances because there is no going concern to preserve, there are no employees to protect, and there is no hope of rehabilitation, except according to the debtor's "terminal euphoria."
 
 
 15
 779 F.2d 1068, 1073 (5th Cir.1986) (footnote collecting cases omitted), cited with approval in, Arnold, 806 F.2d at 939; cf. In re Natural Land Corp., 825 F.2d 296, 298 (11th Cir.1987) (stating a similar list).
 
 
 16
 As a threshold matter, we note that S & S, a single-asset real estate debtor, had virtually all the badges of fraud listed in Little Creek.
 
 
 17
 At bottom, however, the issue of S & S's good faith turns on whether it showed by a preponderance of the evidence that it was attempting a speedy, efficient, feasible reorganization. Marsch, 36 F.3d at 828. Admittedly, S & S submitted evidence that it had taken some preliminary steps towards development of the Moab property and thus toward reorganization. However, as was discussed in the previous section, this project was still in a speculative stage. Thus, we cannot say that the bankruptcy court clearly erred in finding that S & S filed in bad faith.
 
 IV
 
 18
 Finally, S & S relies on In re Can-Alta Properties, Ltd., 87 B.R. 89, 92-93 (Bankr. 9th Cir.1988), to argue that the bankruptcy court abused its discretion when it dismissed the case and lifted the stay.
 
 
 19
 Can-Alta appears to stand for the proposition that it is an abuse of discretion to lift an automatic stay before giving a debtor a reasonable opportunity to propose a confirmable plan and protect its equity. 87 B.R. at 93. It is careful, however, to refrain from creating any per se rules governing what constitutes a reasonable opportunity.
 
 
 20
 Can-Alta is arguably distinguishable from the instant case in at least one crucial respect. In Can-Alta, the BAP reversed the bankruptcy court's finding that the debtor had filed in bad faith. 87 B.R. at 92. It was in this context that the BAP concluded that it was an abuse of discretion for the bankruptcy court to lift the automatic stay before the debtor had a reasonable chance to present a confirmable plan. By way of obvious contrast, in the instant case, we affirm the bankruptcy court's finding of bad faith. Thus, Can-Alta may not apply to this case.
 
 
 21
 Even if it did, however, S & S has not persuaded us that it lacked a reasonable opportunity to present a confirmable plan in the four and one-half months between filing and dismissal. Therefore, we cannot say that the bankruptcy court abused its discretion in dismissing S & S's case and lifting the stay.
 
 
 22
 AFFIRMED.
 
 
 
 *
 The Honorable Bruce M. Van Sickle, Senior District Judge for the District of North Dakota, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 All statutory citations refer to the Bankruptcy Code, 11 U.S.C. §§ 101-1330