
**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No. NV-19-1306-GLB |
| M. DAVID FESKO, | Bk. No. 2:19-bk-12146-ABL |
| Debtor. | |
| M. DAVID FESKO, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| JOHN FESKO; SHELLEY D. KROHN, Chapter 7 Trustee, | |
| Appellees. | |

Submitted Without Argument on May 21, 2020

Filed – June 5, 2020

Appeal from the United States Bankruptcy Court
for the District of Nevada

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, *see* Fed. R. App. P. 32.1, it has no precedential value. *See* 9th Cir. BAP Rule 8024-1.

Honorable August B. Landis, Chief Bankruptcy Judge, Presiding

———————

Appearances:    M. David Fesko, Appellant, pro se on brief; Steven B.
Scow and Daniel G. Scow of Koch & Scow, LLC on brief
for Appellee John Fesko; Jacob L. Houmand on brief for
Appellee Shelley D. Krohn.

———————

Before: GAN, LAFFERTY, and BRAND, Bankruptcy Judges.

## INTRODUCTION

Appellant M. David Fesko ("Debtor") appeals from the bankruptcy court's order converting Debtor's chapter 11[1] case to a case under chapter 7 and from the order denying his motion for reconsideration. The bankruptcy court determined that Debtor filed the petition to deter and harass creditors, impede state court collection rights, and achieve other objectives inconsistent with bankruptcy purposes. The court concluded that cause existed pursuant to § 1112(b) based on Debtor's bad faith in filing the petition, and that conversion, rather than dismissal or appointment of a trustee or examiner, would best serve the interests of creditors and the estate. The bankruptcy court also denied Debtor's motion for

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

reconsideration.

The bankruptcy court's factual findings were supported by the record and it did not abuse its discretion in converting the case, or in denying the motion for reconsideration. We AFFIRM both orders.

**FACTS**

**A.  Prepetition Events**

In 2017, Debtor's son, John Fesko ("John")[2], filed a suit in the superior court for San Francisco County, California (the "San Francisco Action") seeking an accounting and recovery of property which he alleged Debtor wrongfully took from the Jack and Helen Fesko Family Limited Partnership, an Indiana partnership (the "Partnership"), and two family trusts created by Debtor's parents, Jack and Helen Fesko, for the benefit of their grandchildren, John, Matthew, and Michael Fesko. John alleged that while acting as the trustee of the family trusts and as general partner of the Partnership, Debtor engaged in wrongful self-dealing by diverting funds to several offshore entities and accounts using multiple aliases.

After Debtor resigned as general partner of the Partnership in 2009 and as trustee of the trusts in 2011, John became the trustee and general partner. Debtor then filed several claims against John in the San Francisco Action and also sued John in the superior court for San Diego County,

_____

[2] We refer to the son by his first name to distinguish him from his father.  No disrespect is intended.

3

California for possession of personal property (the "San Diego Action").

John filed a cross-complaint in the San Diego Action individually and on behalf of the Partnership, alleging fraud against the Debtor. In September 2018, following a jury trial, the superior court entered judgment against Debtor and in favor of the Partnership in the amount of $766,401, based on claims that Debtor engaged in fraudulent activity while serving as the general partner. The jury also awarded John $9,404 individually, which was satisfied by setoff prior to entry of the judgment.

During the pendency of the San Diego Action, Debtor engaged in several transactions to transfer assets to his then girlfriend and now wife, Ethel Merriman, including: (1) a transfer of $800,000 in March of 2018; (2) transfer of his 50% ownership in a company called Maresco Oliva, Inc. in 2017 or 2018; and (3) transfer of real property in Nebraska for no consideration. Debtor also relocated from California to Nevada during the case.

After the judgment was entered against Debtor, he engaged in further transfers including: (1) payment of $160,000 to Ms. Merriman in September of 2018; (2) withdrawals of approximately $60,000 from a Nevada State Bank account between September 2018 and December 2018; (3) withdrawal of $60,000 from a Bank of America account in October 2018; and (4) transfer of $180,000 from a foreign account in Great Britain to Ms. Merriman in December of 2018.

John domesticated the judgment in Nevada and in December of 2018, he obtained a writ of execution against Debtor's personal property. Pursuant to the writ of execution, the Laughlin Constable's Office[3] seized cash, coins, jewelry and guns valued at over $200,000, and a promissory note payable to Debtor from Ethel Merriman in the amount of $800,000.

In January 2019, John obtained an order in the San Diego Action requiring Debtor to turn over funds in the foreign bank account. After the order was entered, Debtor liquidated the account, which held approximately $80,000, and transferred the funds to three law firms and a real estate developer.

While motions for contempt were pending in the San Diego Action and in the Nevada state court action, Debtor filed his chapter 11 petition.

## B. The Bankruptcy Case

Debtor filed a chapter 11 petition on April 8, 2019 and sought turnover of assets from the Laughlin Constable's Office. John objected to turnover and argued that the Constable's Office should be excused from turnover under § 543(d) because Debtor had a history of mismanaging assets as demonstrated by the fraud judgment, the pending San Francisco Action, and Debtor's post-judgment transfers. John also objected that

---

[3] The Laughlin Constable is a Nevada civil enforcement officer tasked with serving summons, complaints, civil subpoenas and notices, and with enforcing garnishments, evictions, civil bench warrants, and property seizures.

Debtor failed to fully disclose assets in his schedules and that Debtor was not likely to reorganize because his monthly income was insufficient to fund a plan. John noted that Debtor testified at the meeting of creditors that he intended to file a liquidating plan that involved appealing the judgment, replacing John as trustee of the trusts, and obtaining loans on trust assets to pay creditors. The bankruptcy court denied the motion for turnover. Debtor filed a motion to reconsider, which the court also denied.

Debtor then filed a motion to extend the exclusivity period. The bankruptcy court granted the motion over John's objection and extended the exclusivity period to November 4, 2019.

### 1. The Motion to Appoint a Trustee or Convert the Case

In September 2019, John filed a motion to appoint a chapter 11 trustee or alternatively to convert the case to chapter 7 (the "Conversion Motion"). John argued that cause existed to appoint a trustee based on Debtor's pre- and post-petition misconduct in transferring millions of dollars out of his creditors' reach while litigation was pending, and Debtor's unwillingness to schedule voidable transfers or pursue estate causes of action.

Alternatively, John argued that cause existed to convert the case based on: (1) Debtor's misrepresentations of material facts; (2) Debtor's failure to account for all estate assets or to pursue avoidable pre-petition transfers to his wife; (3) diminution of the estate without a reasonable likelihood of rehabilitation; (4) gross mismanagement of the estate; and

6

(5) bad faith in filing the petition to delay state court collection proceedings. Specifically, John alleged that Debtor concealed the $800,000 promissory note payable from Ms. Merriman, the pre-petition transfer to Ms. Merriman of his 50% share in Maresco Oliva Inc., and the purchase of $130,000 in gold.

John supported the Conversion Motion with a declaration of the Chief Clerk of the Laughlin Constable's Office, which stated that the $800,000 promissory note was seized from Debtor's residence pursuant to the writ of execution. John also provided documentary evidence supporting Debtor's various transfers, and transcripts of the meeting of creditors in which Debtor admitted that he transferred $800,000 to Ms. Merriman but denied that it was a loan or that he received a promissory note in exchange.

John provided notice that a hearing on the Conversion Motion was scheduled for October 23, 2019, and pursuant to Local Bankruptcy Rule 9014(d), oppositions to the motion were required to be supported by affidavits or declarations and filed no later than October 9, 2019. Debtor failed to respond to the Conversion Motion by the deadline. However, on September 24, 2019, Debtor personally filed an application to employ special counsel, an application for compensation, a motion for turnover of exempt property from the Laughlin Constable's Office, and a motion for turnover of third party property from the Laughlin Constable's Office.

7

Less than a week later, Debtor's counsel filed a motion to withdraw as attorney of record. Debtor's counsel stated that Debtor filed the motions for turnover and the other applications by himself and that counsel had a fundamental disagreement with Debtor concerning the motions for turnover. Debtor's counsel also filed a motion for a status conference to discuss outstanding issues, including whether Debtor would have sufficient time to respond to the Conversion Motion.

The bankruptcy court set a hearing on the motion to withdraw on shortened notice and conducted the hearing on October 10, 2019. At the hearing, Debtor claimed to have been unaware of the deadline for filing an opposition to the Conversion Motion. The court granted counsel's motion to withdraw, but because the deadline to respond to the Conversion Motion had expired while Debtor's counsel was still attorney of record, the court determined that his withdrawal would not affect the hearing set for October 23, 2019.

On October 11, 2019, Debtor filed a motion to enlarge the time to respond to the Conversion Motion. Debtor argued that his attorney was negligent in failing to respond and had not forwarded a copy of the Conversion Motion to Debtor. On October 18, 2019, Debtor filed an opposition to the Conversion Motion.

Debtor argued that John had not presented evidence of bad faith, mismanagement, or concealment of assets. He also argued that he did not

8

remove any funds from the Partnership or the trusts and that the transfers to Ms. Merriman either occurred before the judgment was entered or were legitimate investments made in the ordinary course of business. He denied the existence of a promissory note for $800,000 from Ms. Merriman and alleged that John manufactured this evidence because there was no mention of it in the transcript of the inventory of items seized from Debtor's residence. Finally, he argued that John failed to establish cause under any provision of § 1112(b)(4).

Debtor supported his response with a declaration, but the declaration only refers to Debtor's actions to secure new counsel. He did not provide any evidence to rebut the factual assertions made in the Conversion Motion.

### 2. The Hearing and the Bankruptcy Court's Ruling

At the hearing on the Conversion Motion, the court first considered whether to grant Debtor's motion to enlarge the time to respond. The bankruptcy court determined that Debtor's delay was based on excusable neglect, and because Debtor had already filed an opposition, the court decided to consider it.

The bankruptcy court first looked to whether there was cause to dismiss or convert the case. The court noted that filing a petition in bad faith constitutes "cause" to dismiss or convert, and bad faith depends on an amalgam of factors that focus on whether the Debtor filed the case to

unreasonably deter and harass creditors or to effect a speedy, efficient reorganization. After applying the factors discussed in *Little Creek Development Co. v. Commonwealth Mortgage Corp (In re Little Creek Development Co.)*, 779 F.2d 1068 (5th Cir. 1986), the court determined that a majority of the factors were present.[4]

In addition to the *Little Creek* factors, the bankruptcy court also determined that the case was essentially a two-party dispute between Debtor and John which could readily be resolved in pending state court proceedings. The court suggested that cause may also exist under § 1112(b)(4)(a) because administrative expenses continued to accrue with no offsetting income.

Although filing a confirmable plan could be a factor that weighs against a finding of bad faith, the court noted that Debtor sought an extension of exclusivity and had not filed a plan. Based on the large size of the judgment and an approximately $3.3 million debt owed to the IRS, the

---

[4] The *Little Creek* factors are:

(1) the debtor has one asset, such as a tract of undeveloped or developed real property;

(2) the debtor's sole asset is encumbered by creditors' liens;

(3) the debtor has no employees, little or no cash flow, and no available sources of income to sustain a plan or reorganization;

(4) the debtor has few, if any, unsecured creditors with relatively small claims;

(5) the property has been posted for foreclosure because of arrearages and the debtor has been unsuccessful in defending foreclosure actions in state court;

(6) the existence of the "new debtor syndrome," in which a single asset entity has been created on the eve of foreclosure to isolate the property and its creditors.

court concluded that Debtor had little hope of proposing a feasible plan based on his scheduled net income of $500 per month. The court noted that Debtor was attempting to obtain a release of the funds in the possession of the Laughlin Constable's Office, not to pay creditors, but to pay attorneys to pursue further state court litigation against John.

Based on all of the facts and factors, the court concluded that Debtor filed the case to "first, unreasonably deter and harass John and his other creditors; second, to impede the exercise of John's state court collection right and remedies; and third, use assets levied upon to pay John's fraud judgment, to instead pay fees of multiple professionals in litigation with uncertainty of any positive outcome." Hr'g Tr. 63:10-15, October 23, 2019.

After determining that cause existed, the court concluded that appointment of a chapter 11 trustee or examiner would not be in the best interests of the estate and creditors. The court also determined that there were no unusual circumstances to preclude conversion or dismissal under § 1112(b)(2), and conversion, rather than dismissal, was in the best interests of the creditors and the estate. The court entered the order converting the case on October 23, 2019.

### 3.    The Motion For Reconsideration

On October 25, 2019, Debtor filed a motion for reconsideration. Debtor argued that the court erred in making findings related to Debtor's ability to reorganize prior to the plan being filed, and by considering

11

allegations made by John's attorney which were not based on evidence.

John opposed the motion to reconsider and argued that Debtor failed to establish any new evidence, a clear error by the court, or an intervening change in controlling law. The chapter 7 trustee also opposed the motion and argued that with the exception of referencing a chapter 11 plan filed after the conversion order, Debtor merely reiterated the arguments he made in his opposition to the Conversion Motion.

On November 14, 2019, the bankruptcy court conducted a hearing on the motion to reconsider. At the hearing, Debtor argued for the first time that John lacked standing to file the Conversion Motion. Debtor also argued that the court relied on false factual assertions made by John, and that creditors would fare better under Debtor's plan than in a chapter 7.

The court analyzed the motion under both Civil Rule 59(e), incorporated by Rule 9023, and Civil Rule 60(b), incorporated by Rule 9024, and concluded that Debtor failed to establish grounds for relief under either rule. Debtor timely appealed.

## JURISDICTION

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(A). We have jurisdiction under 28 U.S.C. § 158.

## ISSUES

Did the bankruptcy court abuse its discretion in converting Debtor's case for cause?

Did the bankruptcy court abuse its discretion in denying Debtor's motion for reconsideration?

## STANDARDS OF REVIEW

"We review for abuse of discretion the bankruptcy court's decision to dismiss a case as a 'bad faith' filing. We review the finding of 'bad faith' for clear error." *Marsch v. Marsch (In re Marsch)*, 36 F.3d 825, 828 (9th Cir. 1994) (internal citations omitted).

We review for abuse of discretion the denial of a motion for reconsideration. *Weiner v. Perry, Settles & Lawson, Inc. (In re Weiner)*, 161 F.3d 1216, 1217 (9th Cir. 1998).

We apply a two-step test to determine whether the bankruptcy court abused its discretion. *Sullivan v. Harnisch (In re Sullivan)*, 522 B.R. 604, 611 (9th Cir. BAP 2014). First, we consider de novo whether the bankruptcy court applied the correct legal standard to the requested relief. *Id.* Then we review the bankruptcy court's factual findings for clear error. *Id.*

Factual findings are clearly erroneous if they are illogical, implausible, or without support in the record. *Retz v. Samson (In re Retz)*, 606 F.3d 1189, 1196 (9th Cir. 2010).

## DISCUSSION

Section 1112(b) provides that the bankruptcy court shall convert or dismiss a case, whichever is in the best interests of creditors and the estate, "for cause," unless the court determines that appointment of a chapter 11

trustee or examiner is in the best interests of the estate.

The bad faith filing of a bankruptcy petition constitutes "cause" for dismissal under § 1112(b). *In re Marsch*, 36 F.3d at 828. The analysis focuses on whether a debtor is attempting "to effect a speedy, efficient reorganization on a feasible basis" or "to unreasonably deter and harass creditors." *Id.* A petition is filed in bad faith if a debtor seeks to "achieve objectives outside the legitimate scope of the bankruptcy laws." *Id.* A filing may also be in bad faith if it is "an apparent two-party dispute that can be resolved outside of the Bankruptcy Court's jurisdiction." *In re Sullivan*, 522 B.R. at 616.

Bad faith depends on an amalgam of factors and no specific factor is determinative. *Idaho Dep't of Lands v. Arnold (In re Arnold)*, 806 F.2d 937, 939 (9th Cir. 1986). A bankruptcy court may consider any factor which demonstrates an abuse of the bankruptcy process and the purpose of reorganization. *Marshall v. Marshall (In re Marshall)*, 721 F.3d 1032, 1048 (9th Cir. 2013). A finding of bad faith is made on a case by case basis, there is no list of factors which must be present in each case to make the finding, and the weight given to any particular factor depends on the circumstances of the individual case. *Can-Alta Props., Ltd. v. State Sav. Mortg. Co. (In re Can-Alta Props., Ltd.)*, 87 B.R. 89, 91 (9th Cir. BAP 1988); *Meadowbrook Investors' Group v. Thirtieth Place, Inc. (In re Thirtieth Place)*, 30 B.R. 503, 506 (9th Cir. BAP 1983).

**A.     The Bankruptcy Court Did Not Abuse Its Discretion In Converting The Case**

Debtor argues that the bankruptcy court erred by: (1) converting the case without allowing Debtor time to find a new attorney; (2) relying on inaccurate and biased facts; and (3) converting the case prior to the expiration of the exclusivity period. Debtor also argues that his attorney was incompetent and that John lacked standing to file the motion to convert.

Debtor has not demonstrated how the bankruptcy court's decision to proceed with the hearing on the Conversion Motion constituted an abuse of discretion in deciding the motion. Although Debtor requested additional time at the hearing to allow an attorney to review his opposition, the opposition had already been filed, and the bankruptcy court considered it in deciding the Conversion Motion. The court was not required to delay proceedings to allow Debtor to seek replacement counsel to review the filed opposition.

Debtor has not shown that the court clearly erred in making its factual findings of bad faith. Debtor argues that the facts asserted in the Conversion Motion were inaccurate and biased, but those facts were supported by documentary evidence and declarations, and by Debtor's own prior testimony. Debtor argues that the evidence is false, but he offered no contravening evidence in support of his opposition. Arguments

made in pleadings or in court do not constitute evidence. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir. 1978). The bankruptcy court's factual findings were not implausible or illogical, and were supported by evidence in the record.

If Debtor had filed a plan of reorganization prior to the hearing, the bankruptcy court may have considered the viability of the plan as a factor in its analysis of bad faith. *See In re Marshall*, 721 F.3d at 1049. But, Debtor did not file a plan until after the case was converted to chapter 7. The bankruptcy court was not required to wait for Debtor to file a plan in order to decide whether the petition was filed in bad faith.

Finally, Debtor argues that John lacked standing to file the Conversion Motion because the Partnership was dissolved in July of 2019. Generally, we do not consider an issue that was not raised sufficiently to permit the bankruptcy court to rule upon it. *Ezra v. Seror (In re Ezra)*, 537 B.R. 924, 932 (9th Cir. BAP 2015). We may consider an issue not properly raised in the bankruptcy court if:

> (1) there are exceptional circumstances why the issue was not raised in the [bankruptcy] court, (2) the new issue arises while the appeal is pending because of a change in law, or (3) the issue presented is purely one of law and the opposing party will suffer no prejudice as a result of the failure to raise the issue in the [bankruptcy] court.

*Id.* at 932 (citing *Franchise Tax Bd. v. Roberts (In re Roberts)*, 175 B.R. 339, 345

(9th Cir. BAP 1994)).

Debtor did not raise the issue of John's standing in his opposition to the Conversion Motion or in his motion for reconsideration. Although Debtor argued at the hearing on the motion for reconsideration that John lacked standing, the argument was based on allegations of circumstances which apparently existed prior to the filing of the Conversion Motion and could have been raised in Debtor's opposition to that motion. Debtor did not sufficiently raise the issue of John's standing to permit the bankruptcy court to rule upon it, and he has not established exceptional circumstances that would permit us to consider it. Thus, Debtor waived the issue of John's standing.

Even if Debtor had not waived the issue, we would find that John had standing to file the motion. It is undisputed that the Partnership holds a judgment against Debtor and that John is a partner of the Partnership. Debtor's argument that the Partnership was administratively dissolved is not relevant to the issue of standing because administrative dissolution does not terminate a partnership or terminate the authority of any partner to act on behalf of the partnership to wind up the affairs or complete business begun prior to the dissolution. *See* Ind. Code §§ 23-4-1-30; 23-4-1-33.

The bankruptcy court did not clearly err in finding bad faith and did not abuse its discretion in converting the case.

**2.    The Bankruptcy Court Did Not Abuse Its Discretion By Denying The Motion For Reconsideration**

Debtor appealed the order denying his motion for reconsideration, but he has not provided any argument related to the order in his opening brief. Accordingly, it has been waived. *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[O]n appeal, arguments not raised by a party in its opening brief are deemed waived."). If we were to review the matter, we would find no abuse of discretion by the bankruptcy court in denying the motion.

A motion for reconsideration is treated as a motion to alter or amend under Civil Rule 59(e), made applicable by Rule 9023, if it is filed within fourteen days of the order. *See Am. Ironworks & Erectors, Inc. v. N. Am. Constr. Corp.*, 248 F.3d 898-99 (9th Cir. 2001). A Rule 9023 motion should not be granted, "absent highly unusual circumstances, unless the [bankruptcy] court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law." *389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999).

Debtor did not provide any grounds to support relief under Rule 9023. He merely reiterated arguments made in his opposition and suggested that his plan would provide a better outcome for creditors than conversion. Debtor waived the issue of whether the bankruptcy court erred in denying the motion for reconsideration, but, in any event, we see no

abuse of discretion in the court's ruling.

## CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court's orders converting the case to chapter 7 and denying Debtor's motion for reconsideration.