In re THIRTIETH PLACE, INC., an Arizona corporation, Debtor.

**MEADOWBROOK INVESTORS' GROUP and Jerome Deitch, Plaintiffs-Appellants,**

v.

**THIRTIETH PLACE, INC., an Arizona corporation, Defendant-Appellee.**

BAP No. AZ–82–1209.
Bankruptcy No. 81–2297 PHX HMC.
Adv. No. 81–885 HMC.

United States Bankruptcy Appellate Panels of the Ninth Circuit.

Argued Nov. 17, 1982.

Decided March 15, 1983.

William J. Monahan, Law Offices of Wallace J. Baker, Jr., P.C., Phoenix, Ariz., for plaintiffs-appellants.

Howard C. Meyers, Davis & Meyers, P.C., Phoenix, Ariz., for defendant-appellee.

Before GEORGE, KATZ and HUGHES, Bankruptcy Judges.

OPINION

KATZ, Bankruptcy Judge:

In the instant proceeding, the appellants seek review of the denial of their complaint to lift the debtor's automatic stay or, in the alternative, to dismiss its Chapter 11 case with prejudice. In particular, the appellants question the trial court's finding that the debtor's petition was filed in good faith. After a review of the trial record, we must hold that the bankruptcy court's finding of good faith is not supported by the record. REVERSED.

I. BACKGROUND

The facts of this case are, for the most part, uncontested. The appellant, MEADOWBROOK INVESTORS' GROUP, was

organized in April 1980 by sixteen (16) individuals wishing to pool some $100,000 for investment purposes. The other appellant, JEROME DEITCH, is the Meadowbrook Group's general partner.

On or about May 22, 1980, the Meadowbrook Group contracted with one JAMES BETZ to invest in the development of a townhouse condominium project to be located at Thirtieth Place and Coolidge in Phoenix, Arizona. To implement this agreement, Mr. Betz and the Meadowbrook Group formed a joint venture known as the COOLIDGE ASSOCIATES PARTNERSHIP. In return for their $100,000 investment, the Meadowbrook Group was promised $165,000 within one (1) year's time. This promise was supported by a note signed by Mr. Betz and secured by a deed of trust on the Phoenix real property. The date of payment on the Betz note and trust deed was April 22, 1981.

In November 1980, without the knowledge of the Meadowbrook Group, Mr. Betz assigned his interest in the Coolidge partnership to one DENNIS ABERT. Although this transfer was in violation of the partnership agreement between Mr. Betz and the Meadowbrook Group, the latter investors ultimately agreed to permit Mr. Abert to assume Mr. Betz' partnership position. Prior to the release of Mr. Betz, however, Mr. Abert was required to execute his own $165,000 note to the Meadowbrook Group and to issue them a new deed of trust on the Phoenix real property. The due date on these documents was April 23, 1981.

As the time approached for the payment on the Abert note and trust deed, it appears that Mr. Abert became concerned with the slow development of the Thirtieth Place and Coolidge project. He therefore sought the association of one RONALD CONQUEST to help him salvage this venture. Pursuant to this association, on March 31, 1981, he assigned his interest in the Phoenix real property to Mr. Conquest. Once again, this assignment was unknown to the Meadowbrook Group or to its individual partners.

Notwithstanding the involvement of Mr. Conquest, on April 23, 1981, Mr. Abert failed to make the $165,000 payment to the Meadowbrook Group. Thereafter, in June 1981, Meadowbrook noticed power of sale foreclosure proceedings on the Phoenix real property. This sale was subsequently set to occur on September 15, 1981.

Prior to foreclosure, however, Mr. Abert and Mr. Conquest sought and obtained a temporary restraining order from the Arizona Superior Court preventing the Meadowbrook Group's sale. This order was predicated upon the posting of a $200,000 bond, which was never deposited with the Arizona court. Instead, on September 14, 1981, Mr. Abert formed a corporate entity known as COOLIDGE PROPERTIES, LTD. He and Mr. Conquest then quitclaimed their respective interests in the Phoenix real property to this entity and, on the date of the scheduled foreclosure sale, they filed a Chapter 11 petition on behalf of this new debtor.

The name chosen for the new debtor corporation was too similar to the name of an existing Arizona corporation and the final approval of the Arizona Corporation Commission was withheld. Faced with this problem and with a motion by the instant appellants to dismiss the Coolidge Chapter 11 case, on September 22, 1981, Coolidge Properties, Ltd., quitclaimed its interest in the subject real property to another new corporate entity known as THIRTIETH PLACE, INC.—the present debtor.

On November 18, 1981, the bankruptcy court dismissed the Coolidge case as a bad faith filing. Subsequently, however, the same bankruptcy court, another judge presiding, found that the Thirtieth Place Chapter 11 had been filed in good faith. It therefore refused to dismiss this debtor's case or to lift its automatic stay. The Meadowbrook Group and its general partner have appealed this decision.

## II. ANALYSIS OF THE FACTS AND THE LAW

The principal issue presented by the appellants is whether the trial court abused its

discretion in refusing to dismiss the Thirtieth Place, Inc., case as having been filed in bad faith. Essential to a resolution of this issue is the question of whether the court below clearly erred in finding that the debtor's petition was filed in good faith.

Although 11 U.S.C. § 1112(b) does not expressly require a petition for relief under Chapter 11 to be filed in good faith, evidence of an intent to abuse the reorganization process has been held to be sufficient "cause" upon which a case can be dismissed. *In re 299 Jack-Hemp Associates,* 20 B.R. 412 (N.Y.Bkrtcy.1982); *In re Spenard Ventures, Inc.,* 18 B.R. 164, 166–67 (D.Alaska Bkrtcy. 1982). A petition filed in bad faith may manifest an intent to cause hardship or to delay creditors by resort to the Chapter 11 device merely for the purpose of invoking the automatic stay, without an intent or ability to reorganize his financial activities.

The transfer of one's assets to a new debtor on the eve of a Chapter 11 filing may be evidence of such an improper state of mind and such transfers will be scrutinized with great care. *Matter of Levinsky,* 23 B.R. 210, 218 (N.Y.Bkrtcy.1982); *In re Beach Club,* 22 B.R. 597, 599 (N.D.Cal. Bkrtcy.1982). Nevertheless, other factors may weigh against a finding of bad faith, even when a transfer to a new debtor is made immediately prior to a filing under Chapter 11.

We consider the determination of this question to require an examination of all the particular facts and circumstances in each case.

> Whether it [good faith] exists in any case depends upon the facts and circumstances presented. No one evidentiary fact can be given paramount weight in deciding the question. If it is obvious that a debtor is attempting unreasonably to deter and harass creditors in their bona fide efforts to realize upon their securities, good faith does not exist. But if it is apparent that the purpose is not to delay or defeat creditors but rather to put an end to long delays, administration expenses ... to mortgage foreclosures, and to invoke the operation of the [bankruptcy law] in the spirit indicated by Congress

> in the legislation, namely, to attempt to effect a speedy efficient reorganization, upon a feasible basis ... good faith cannot be denied.

*Matter of Levinsky, id.,* at 218 quoting from *Loeb Apartments, Inc. v. Malwitz (In re Loeb Apartments, Inc.,* 89 F.2d 461, 463 [ (7th Cir. rehrg. denied (1937) ] ).

We believe the approach taken by the court in *Levinsky, supra,* at 218, as articulated by the Seventh Circuit regarding the good-faith requirement for a petition filed under § 77B of the Act, to be the most appropriate guide to determine whether the debtor in this case has filed in good faith.

■ Chapter 11 of the Bankruptcy Code has one purpose; the rehabilitation or reorganization of entities entitled by statute to its relief, *In re Dalton Lodge Trust # 35188,* 22 B.R. 918 (N.D.Ill.Bkrtcy.1982). A corporation that is created for the purpose of filing bankruptcy is an imposition on the state that charters the corporation and on the Chapter 11 court that serves to rehabilitate and reorganize the corporate debtor. Thus, the factual issue to be determined is whether the debtor was created for the predominant purpose of filing in bankruptcy.

Although the proximity of the debtor's formation to the date of the petition, by itself, does not indicate an intent to abuse the Code's reorganization provisions, persuasive evidence of bad faith accumulates upon a close scrutiny of the circumstances giving rise to the creation of Thirtieth Place, Inc.

■ The conveyance of the subject real property, the sole asset of the debtor, was necessary for its creation and the filing of its petition for reorganization. The predominant purpose in filing the petition was to prevent foreclosure upon the heavily encumbered property. It must be noted that there was no plan contemplated for the infusion of capital, no gain in managerial expertise, no history of past business conduct, no employees and indeed, no current business activity on the date of the commencement of the case nor are there any reasonable prospects for the conduct of future business. In short, the debtor was

created for the sole purpose of obtaining protection under the automatic stay by filing bankruptcy.

It has been argued that there has been no harm to the creditors. In this we cannot agree. Delay, while harmful to creditors will not in and of itself constitute bad faith or give rise for dismissal. However, when added to the other factors in this case, delay is just one more factor in considering whether bad faith is present. It is evident from this case, that the purpose for creating the corporation and filing bankruptcy was to delay the secured creditor. While any delay is harmful, when a proceeding is filed solely for the purpose of delay, the resulting injury approaches one which, when coupled with other factors should result in a dismissal.

Our conclusion is further bolstered by observing the inability of the promoters to obtain the $200,000 bond upon which the state court's temporary restraining order was predicated. One can only deduce a lack of equity in the subject property or the unwillingness of the promoters to put their individual assets at risk in securing the $200,000. In this regard, it is well to note that the promoters failed to simply pay the plaintiffs thereby avoiding the foreclosure and the subsequent necessity of filing a petition on behalf of the ill-conceived corporate shells.

In light of the preceding factors the conclusion becomes inescapable: that the debtor was formed for the sole purpose to unjustifiably delay the investors' recourse against their security and to mount additional obstacles to the pursuit of their rights under the deed of trust and the note.

The reorganization process of Chapter 11 was designed to protect the creditors and junior lienholders of the debtor from premature foreclosure as well as to prevent economically wasteful liquidation of valuable entities. Where a petition is filed to subvert the legitimate rights of creditors in the absence of any reasonable expectations that the debtor can successfully reorganize, there is no basis for access to Chapter 11 and the protective machinery of the automatic stay. This is such a case.

Thus, notwithstanding the directive requiring due regard and deference to the trial court's findings of fact, Bankruptcy Rule 810, we hold a finding of good faith to be clearly erroneous and without evidentiary foundation. In particular, the court's Finding No. 23 concerning the existence of the debtor's unsecured creditors is not supported by any evidence within the record. While, as discussed, the absence of unsecured creditors does not conclusively establish that the petition was not filed in good faith, it does cast serious doubt upon any reasonable chance for a successful reorganization. It is the combined weight of all the factors which leads us to the firm conviction that the debtor's petition was not filed in good faith. REVERSED.

GEORGE, Bankruptcy Judge, dissenting.

I respectfully dissent from the decision of the majority.

For the most part, I do not disagree with the statements of law contained in the majority's opinion. At the heart of this statement of law, however, are two doctrines which require our support of the lower court's determination. First, each decision of good or bad faith in the filing of a bankruptcy petition must be determined upon the facts and merits of that case. *Matter of Levinsky*, 23 B.R. 210, 218 (E.D. N.Y.Bkrtcy.1982). Second, the trial court should be given due deference in arriving at findings of fact concerning issues of good or bad faith. Fed.R.Bankr.P. 752(a) & 810. In the case at bar, I believe that the trial court made findings sufficient to support a secondary finding of good faith and that these findings are supportable from the record.

At the heart of my difference with my colleagues, is the question of whether, when Mr. Abert and Mr. Conquest transferred the Phoenix real property to the debtor and then filed a Chapter 11 petition on behalf of Thirtieth Place, Inc., they intended to use that chapter of the bankruptcy code for a purpose for which it was never intended. In this regard, we are, I believe, in agreement that Chapter 11 was not intended to

be a temporary refuge for debtors who do not ultimately seek the rehabilitation of their financial situation or the reorganization of their legal structure. Where rehabilitation or reorganization is intended, however, I believe that a great many of the factors raised by the appellants and by the majority become irrelevant.

For example, I fail to see why the mere fact that a corporation was created in anticipation of the filing of a petition under Chapter 11 should necessarily impute bad faith to that corporation's principals. The Chapter 11 process is, by its very nature, a rigorous exercise, which subjects a business to legal strictures and scrutiny not necessarily advantageous to healthy business enterprises. Therefore, when creditors or equity security holders would not be harmed by such a procedure, reason does not readily indicate why a person or entity should be forbidden from taking an ailing business venture, placing it within a newly-formed corporate shell, and seeking to rehabilitate it under Chapter 11. While this procedure may not work, as a matter of economic practicality, that is a matter of feasibility, not necessarily bad faith. And, while a lack of feasibility may, in some instances, be raised as a "cause" for dismissal, *see* 11 U.S.C. § 1112(b)(1), such was not the case in the proceeding now before us. The appellants simply say that debtor's petition was filed in bad faith.

Looking at the case at bar, there do exist some procedural irregularities, which might lead a court to question the motives of Mr. Abert and Mr. Conquest. Nevertheless, these same irregularities—the last-minute filing of a petition on the eve of foreclosure and the improper use of a corporate name—can be ascribed as well to the same sort of haste which many debtors find themselves under in attempting to resolve their debt problems. Other factors convinced the court below that the debtor and its principals actually intended to use their Chapter 11 case to repay all of their creditors and that their petition could be used to accomplish that result.

First, and most important in my mind, the appellants have cited no significant evidence to contradict the trial court's finding that the debtor had the intent to pursue its development of the Phoenix project. To the contrary, although the testimony of Mr. Abert was that he and Mr. Conquest had formed Thirtieth Place, Inc., in anticipation of filing a Chapter 11 petition, Mr. Abert also stated that they "*were on a very definite game plan to develop the property* and, in order to protect our position, [the declaration of bankruptcy] was one of our alternatives." (R.T., January 11 & 12, 1982, at 26) (emphasis supplied). Moreover, this finding is also supported by the bankruptcy court's additional uncontested finding that the debtor had proposed a plan of reorganization and had filed a disclosure statement.

These findings do not indicate the sort of delay which typifies a filing solely for purposes of invoking the automatic stay. (With this plan before the bankruptcy court and the Thirtieth Place creditors, it is difficult for me to see why the appellants didn't simply seek to contest confirmation of that plan and then seek dismissal under 11 U.S.C. § 1112(b)(2).)

Of secondary importance are the findings of the trial court that 1) a sizeable equity existed in the Phoenix real property, and 2) third-party secured and certain other unsecured creditors were also being affected by the debtor's plan. (I must disagree with the statement of the majority that there is no evidence to support the trial court's finding that the debtor had unsecured creditors. Despite the appellants' apparent confusion of unsecured debts for secured debts in their closing brief, they do not seem to contest the fact that there were unsecured creditors of Thirtieth Place, Inc. Therefore, without the full reporter's transcript before the panel, it would be unwise to set aside the trial court's finding in this regard for lack of evidence.) These findings clearly indicate that there existed a justifiable purpose, beyond the immediate need to prevent foreclosure, for which the filing of a Chapter 11 petition was crucial.

Although I agree with the majority that the filing of a Chapter 11 petition for a purpose other than rehabilitation or reorganization represents "cause" sufficient to dismiss that case, such a decision requires an investigation into matters of intent.

Such an investigation is accomplished both by an examination of circumstances and of the credibility of witnesses. The determinations of the trial court, following such an examination, should not be set aside unless so clearly in error as to be unsupportable by the record.

In the present case, an able and experienced trial judge found that the debtor's principals intended to use Chapter 11 for the purpose of rehabilitating their Phoenix townhouse project. Both the statement by Mr. Abert of his intent and the actions taken by the debtor following the filing of its petition, provide evidence sufficient to support this finding. I would affirm that determination.