**In the Matter of SOUTHWEST DEVEL-OPMENT CORPORATION, Debtor(s).**

**Bankruptcy No. 87–2907.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

July 17, 1987.

Harley E. Riedel, Tampa, Fla., for Mildred Jacobson trustee of the Mildred Jacobson Family Trust.

Malka Isaak, Tampa, Fla., for the debtor Southwest Development Corp.

ORDER ON EMERGENCY MOTION TO DISMISS CHAPTER 11 CASE AND ORDER ON EMERGENCY MOTION FOR RELIEF FROM AUTOMATIC STAY OR ADEQUATE PROTECTION

ALEXANDER L. PASKAY, Chief Judge.

THE MATTER under consideration is an Emergency Motion to Dismiss Chapter 11 Case and an Emergency Motion for Relief From Automatic Stay or Adequate Protection filed by Mildred Jacobson, as Trustee of the Mildred Jacobson Family Trust, and Mildred Jacobson as Trustee of "Trust B" of the Norman Jacobson Family Trust (Jacobson), creditors in the above-captioned case. Jacobson seeks an order dismissing the bankruptcy case under § 1112(b) of the Bankruptcy Code for "cause" claiming that Southwest Development Corporation (Debtor), the Debtor in the above-captioned case, filed this Chapter 11 Petition in bad faith. The Court has considered the Motions, together with the record, heard arguments of counsel, and finds as follows:

The Debtor filed its Chapter 11 Petition on May 29, 1987. The sole asset of the Debtor is certain real property located in St. Petersburg, Florida, which consists of forty (40) apartment units contained in a single building, and is commonly known as the Moreland Apartments. Jacobson is the holder of a second mortgage on the property in the amount of $543,023.27. The property is also encumbered by a first mortgage held by Home Federal Savings and

Loan of St. Petersburg (Home Federal) in the amount of $411,000.00.

Prior to the Debtor's purchase of the Moreland Apartments, Jacobson sold the subject property on May 31, 1983, to Moreland Partnership, a Florida general partnership, which assumed the first mortgage to Home Federal in the amount of $443,286.00. In addition, Jacobson took a Purchase Money Mortgage in a second position for $450,000.00. The total purchase price was $1,100,000.00. All mortgages were kept current by Moreland Partnership until October 1986 when the general partnership defaulted on the second mortgage of Jacobson. Jacobson naturally accelerated the mortgage at that time, and on February 9, 1987, filed a foreclosure action in the Sixth Judicial Circuit Court of Pinellas County, Florida, Case No. 87–1839–11, and sought to foreclose her second mortgage. Jacobson also filed a lis pendens, a Motion for Appointment of Receiver and a Motion for Summary Judgment in connection with the foreclosure action.

On March 26, 1987, the Circuit Court entered an Order Appointing Temporary Receiver, naming Bob Roberts as the receiver and directing him to take possession of, manage, maintain, protect and preserve the property. On May 21, 1987, a hearing was held on Jacobson's Motion for Summary Judgment, and the Circuit Court verbally granted the Motion for Summary Judgment. The intervention of this Chapter 11 case has prevented the written order from being entered on the Motion for Summary Judgment.

On May 19, 1987, ten days before the Chapter 11 Petition was filed, the Debtor purchased the property from Moreland Partnership. It is important to note that at the time of the purchase, Irwin Cantor, president of the Debtor, had knowledge of the pending foreclosure action and of the Court's appointment of a receiver and was interested in discounting Jacobson's mortgage. A Contract for Sale and Purchase (Exh. # 1) was executed on May 19, 1987; a Warranty Deed was the method of closing on May 19, 1987 (Exh. # 2); Cantor signed a Mortgage Note on May 19, 1987, in the amount of $100,000.00 to Moreland Partnership, which placed them in third position (Exh. # 3); and Cantor executed a mortgage in favor of Moreland Partnership on May 19, 1987 (Exh. # 4). Cantor made a cash down payment of $2,000.00 to Moreland Partnership at the time of closing, and this was the only consideration except for the commercial paper described above. Cantor also guaranteed $50,000.00 personally to Moreland Partnership for any deficiency arising in the foreclosure action which may be sought by Jacobson in the future.

The Debtor corporation was formed early in 1986. Cantor is the president and majority stockholder, and his wife is the only other corporate officer. While it may be true that the corporation in the past had owned several other pieces of property, it is not in dispute that the forty-unit apartment building is the only asset of the corporation now. The corporation has no employees, is not engaged in business, has as its only asset the Moreland Apartments and no unsecured creditors.

The value of the subject property is $735,000.00. Seventeen of the forty units are not rented at this time, and both the interior and exterior of the building is in need of substantial repairs. It should also be noted that the area surrounding the property is extremely rundown, which has affected the value of the subject property. The total debt structure of the property is:

| | | |
|---|---|---|
| (1) | first mortgage to Home Federal | $411,000.00 |
| (2) | second mortgage to Jacobson | $543,023.27 |
| (3) | third mortgage to Moreland Partnership | $100,000.00 |
| | TOTAL: | $1,054,023.27 |

Gross monthly rentals at a 60% occupancy rate as collected by the Receiver for the past three months are as follows:

(1) April $6,906.00
(2) May $5,560.00
(3) June $3,870.00 (reflects collection of ¾ of rents)

The subject property has the following monthly expenses:

| | | |
|---|---|---|
| (1) | manager | $950.00 |
| (2) | utilities | $1,100.00 |
| (3) | insurance | $181.00 |
| (4) | property taxes | $1,666.00 |
| (5) | supplies | $200.00 |

| (6) maintenance | $350.00 |
| TOTAL: | $4,447.00 |

These figures do not include the monthly mortgage payments which are as follows:

| (1) Home Federal | $3,843.00 |
| (2) Jacobson | $3,500.00 |
| (3) Moreland Partnership | undetermined |
| MINIMUM: | $7,343.00 |

Thus, the total monthly debt structure and expenses which must be serviced by rental income is $11,790.00. Based on a projection of 100% occupancy on the current rental income of $295.00 for one-bedroom apartments and $235.00 for studio apartments, the total rental income for the property would be $10,905.00, which could not service the existing monthly debt structure and expenses on the subject property.

Jacobson contends that the Debtor filed its Chapter 11 Petition in bad faith in that the only purposes for filing were to stall and delay Jacobson's continuance of the foreclosure action and to attempt to discount the second mortgage to Jacobson for an approximate amount of between $200,-000.00 to $300,000.00.

The Debtor admits that the above reasons were the motivations for its filing of this Petition. Cantor, however, maintains that he is willing and able to make adequate protection payments, i.e., the contract payments due on the second mortgage, to Jacobson on behalf of the Debtor.

As indicated earlier, the dismissal sought by Jacobson of this Chapter 11 case is based on § 1112(b) of the Bankruptcy Code, which inter alia provides as follows:

11 U.S.C. § 1112 Conversion or dismissal

(b) Except as provided in subsection (c) of this section, on request of a party in interest, and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause....

Jacobson seeks a dismissal for "cause." The term "cause" as used in this section is not defined and it was obviously intended to be a flexible concept. This is evident from the legislative history of this section, which includes the following statement discussing the concept of "cause" as used in this section: "The Court will be able to consider other equitable powers to reach an appropriate result in individual cases." H.R.Rep. No. 595, 95th Cong., 1st Sess. 406 (1977); U.S.Code Cong. & Admin.News 1978, at 5787, 6362. It is now universally recognized that it is appropriate to dismiss a Chapter 11 case for "cause" if it appears that the petition was filed in bad faith. In re Waldron, et al., 785 F.2d 936 (11th Cir.1986); In re Albany Partners, Ltd., 749 F.2d 670 (11th Cir.1984); In re Thirtieth Place, Inc., 30 B.R. 503 (9th Cir.1983); In re Wamsganz, 13 B.C.D. 973 (Bankr.E.D.Miss.1985); In re Levinsky, 23 B.R. 210 (Bankr.E.D.N.Y.1982); In re Spenard Ventures, Inc., 18 B.R. 164 (Bankr.D.Alaska 1982); In re Victory Construction Co., Inc. 9 B.R. 549 (Bankr.C.D.Cal.1981).

This Court recently addressed the issue of dismissal of a Chapter 11 case for "cause" in In re Welwood Corporation, 60 B.R. 319 (Bankr.M.D.Fla.1986). In Welwood, supra, this Court, citing Little Creek Development Co., Inc., 779 F.2d 1068 (5th Cir.1986), articulated several factors which are usually present in Chapter 11 cases not filed in good faith and which may be considered in a motion to dismiss for cause:

(1) debtor has one asset such as a tract of undeveloped or developed real property;

(2) the secured creditors' liens encumber this tract;

(3) there are generally no employees except for the principals;

(4) little or no cash flow, and no available sources of income to sustain a plan of reorganization or to make adequate protection payments;

(5) few, if any, unsecured creditors whose claims are relatively small;

(6) the property has usually been posted for foreclosure because of arrearages on the debt;

(7) the debtor has been unsuccessful in defending actions against the foreclosure in state court;

(8) the debtor and one creditor may have proceeded to a standstill in state court litigation, and the debtor has lost or

has been required to post a bond which it cannot afford;

(9) allegations of wrongdoing by the debtor or its principals; and

(10) the "new debtor syndrome" in which a one-asset equity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors.

A comparison of the factors outlined above with the facts of this case leaves the Debtor in a virtually indefensible position. It is without dispute that the sole asset of the Debtor is the one piece of real estate subject to foreclosure sale. The Debtor has no income and there is no viable business entity to rehabilitate. While it is true that this Debtor was not created on the eve of bankruptcy, nevertheless, it is clear that as noted it was nothing more than a bare corporate shell and that it has no available sources of income to sustain a plan of reorganization. In addition, despite Cantor's offer to make adequate protection payments to Jacobson, Cantor is only a principal of the Debtor, and the Debtor would not be obligated to make the adequate protection payments to Jacobson. Furthermore, any attempt to enforce these payments should they become in default would be yet another delay to the foreclosure sought by Jacobson.

It is now well established that courts are not required to retain cases on their dockets which were not filed to achieve the valid and legitimate purposes designed by Congress through the enactment of the rehabilitative provisions of Chapter 11. To do so would be a total disregard of the basic overriding purpose of the system designed by Congress which was to enable a financially distressed debtor to achieve rehabilitation. It is evident from the outset that there is no reasonable expectation that the financial situation of the Debtor can be successfully repaired through the reorganization process and that the case was filed solely to use the bankruptcy forum to hide under the protective umbrella of the automatic stay in order to gain time and prevent secured creditors from enforcing their legitimate claims. This Court is satisfied,

therefore, that "cause" exists which warrants a dismissal based on bad faith filing. Based on the foregoing, this Court is not required, nor is it inclined, to retain this case on its docket.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Emergency Motion to Dismiss Chapter 11 Case be, and the same is hereby, granted, and the Chapter 11 case is dismissed. It is further

ORDERED, ADJUDGED AND DECREED that the Emergency Motion for Relief From Automatic Stay or Adequate Protection be, and the same is hereby, granted and the automatic stay is lifted.