**In re HUTTON VALLEY FARMS, Debtor.**

**No. 00–60720.**

United States Bankruptcy Court,
W.D. Missouri,
Southern Division.

July 6, 2000.

Brian K. Asberry, Neale, Newman, Bradshaw & Freeman, Springfield, MO, for Bank of Houston.

Stephen W. Daniels, Rolla, MO, for debtor.

## ORDER IMPOSING RULE
### 9011 SANCTIONS

ARTHUR B. FEDERMAN, Chief Judge.

On April 28, 2000, this Chapter 7 bankruptcy case was filed. Debtor Hutton Valley Farms was identified as a general partnership. Velma and Ralph Hood were identified as the general partners. Mr. and Mrs. Hood had previously filed a Chapter 13 petition on August 25, 1999, in order to stop a foreclosure sale as to real estate in which the Bank of Houston held a First Deed of Trust. On February 15, 2000, before this Court ruled on a motion to lift the automatic stay filed by the Bank of Houston, the Hoods voluntarily dismissed their Chapter 13 case. The Bank of Houston again scheduled a foreclosure sale for this same real estate for May 1, 2000. On April 27, 2000, Stephen W. Daniels, counsel for the Hoods in their Chapter 13 case, informed the Bank of Houston that the Hoods had transferred their interest in the real estate to a partnership named Hutton Valley Farms, and that he was preparing to file a bankruptcy petition on behalf of Hutton Valley Farms. On that same date, counsel for the Bank of Houston filed a motion to dismiss and a motion for sanctions, and petitioned this Court for an emergency hearing on same. On April 28, 2000, this Court held an emergency hearing at which Mr. Daniels failed to appear. At that hearing, this Court ordered that the scheduled foreclosure sale be conducted as scheduled on May 1, 2000; that the deeds and paperwork be completed, but that no deed be recorded, that no party make any attempt to convey the subject property in any form prior to the foreclosure sale; and that the motion to dismiss and the motion for sanctions would be heard on May 17, 2000. On May 17, 2000, this Court took up the motion to dismiss. After testimony by both Mr. and Mrs. Hood and a representative from the Bank of Houston, I granted the motion to dismiss the case as a bad faith filing.

In conjunction with the motion dismissing the case as a bad faith filing, this Court issued an Order to Show Cause (the OTSC) why Mr. Daniels should not be sanctioned in an amount not to exceed the fees, costs, and expenses incurred by the Bank of Houston as a result of the bad faith filing. Pursuant to Rule 9011 of the Federal Rules of Bankruptcy Procedure, this Court granted Mr. Daniels 21 days from the date of the OTSC to demonstrate why he should not be sanctioned in said amount for his violation of Rule 9011(b)(2).

Rule 9011(b) provides that when an attorney signs a document filed with the Court, such attorney certifies that to the best of his knowledge, information, and belief the document is not being presented for an improper purpose, that the claims contained therein are warranted by existing law or that there is a nonfrivolous argument for the extension or modification of that existing law, and that the allegations have some evidentiary support.[1] Rule 9011 also provides that the Court, on its own initiative, may enter an order describing the conduct that purportedly fails to comply with the requirements of Rule 9011(b), and directing the attorney to show cause why it has not violated subsection (b).[2]

This Court found at the hearing on May 17, 2000, that Mr. Daniels signed a bankruptcy petition and filed a Chapter 7 bankruptcy case in the name of a debtor that owned no assets and had no liabilities. The assets and liabilities listed in the bankruptcy schedules were those of Mr. and Mrs. Hood, not Hutton Valley Farms. The debtor was purportedly formed just prior to the filing in order to hold the real estate subject to the Bank of Houston's lien, yet no record of a transfer of the real

---

1. Fed.R.Bankr.P. 9011(b).

2. *Id.* at 9011(c)(2).

estate was recorded. The debtor was formed, and the case was filed, for the sole purpose of stopping the foreclosure sale, since section 109(g) of the Bankruptcy Code specifically forbade another filing by Mr. and Mrs. Hood for 180 days from the date of the voluntary dismissal of their Chapter 13 case.[3]

■ Mr. Daniels was ordered to show cause, on or before June 16, 2000, why he should not be sanctioned in the amount of the fees and other expenses incurred by the Bank of Houston as a result of the bad faith filing. In his response to the OTSC, Mr. Daniels waived his right to a hearing and consented to this Court making a ruling based upon his written response.[4] In that Response Mr. Daniels argued that he believed the Hoods had transferred all of their assets and liabilities to Hutton Valley Farms, and that it was their intent to do so, despite the fact that no deed was executed or recorded. Additionally, Mr. Daniels stated that he was not familiar with a line of cases that hold that, if a debtor transfers all of its assets to another entity and then puts that entity into bankruptcy, unless there is an attempt to treat the new entity as a separate business as a practical matter, the filing is meant to frustrate creditors and abuse the bankruptcy system.[5] This phenomenon is known as the "new debtor syndrome" and such cases are routinely dismissed as a bad faith filing.[6] Mr. Daniel's claim that he was not familiar with this line of cases is not a defense to the OTSC. Rule 9011 specifically requires an attorney to make a reasonable inquiry that the action to be filed is warranted by existing law, and that such action is not for any improper purpose.[7]

Mr. Daniels also argues that the bankruptcy filing was intended to maximize the return to all creditors, as the Chapter 7 trustee would obtain a better price for the real estate than the Bank of Houston. If that were the case, he should have counseled the Hoods to convert the prior case to Chapter 7, or contest the motion for relief from stay filed by the Bank of Houston in that case. By dismissing that case, and then filing a Chapter 7 case under a different name on the eve of the foreclosure, he simply delayed the process more than two months, and caused the Bank of Houston to expend additional funds to obtain the relief to which it would have been entitled.

■ Mr. Daniels has not demonstrated that he could have had, or should have had, a reasonable belief that this second bankruptcy filing was for a proper purpose. Moreover, the Eighth Circuit recently upheld an award of sanctions severally against a debtor's attorney.[8] I find that Mr. Daniels has violated Rule 9011, and that sanctions are appropriate. I further find that the appropriate amount of the sanctions is the additional fees and expenses incurred by the Bank of Houston as a result of the bad faith filing. The Bank of Houston would have incurred the costs of the foreclosure sale even if this case had not been filed, thus, I will not allow any fees or expenses that are directly related to the foreclosure sale and not to the bankruptcy filing.

Counsel for the Bank of Houston was ordered to submit an itemized account of attorney's fees, costs, and expenses related to the bad faith filing. As instructed, counsel submitted an itemized account of the Bank of Houston's out of pocket ex-

---

3. 11 U.S.C. § 109(g).

4. Doc. # 17 (Response to Order to Show Cause Why Sanctions Should Not Be Imposed).

5. *Grunewaldt v. Mutual Life Ins. Co. of New York (In re Coones Ranch, Inc.),* 7 F.3d 740, 743 (8th Cir.1993)

6. *See Meadowbrook Investors' Group v. Thirtieth Place, Inc. (In re Thirtieth Place, Inc.),* 30 B.R. 503, 505–06 (9th Cir. BAP 1983).

7. Fed.R.Bankr.P. 9011(b)(1) and (2).

8. *Wei v. Fink (In re Graven),* 186 F.3d 871, 872–73 (8th Cir.1999), *cert. denied,* June 20, 2000.

penses incurred since April 24, 2000.[9] The total fees and costs incurred by the Bank of Houston in connection with the foreclosure sale, the bankruptcy filing, the trustee's fees, and the updated title work was $6,543.10. Of that amount the Bank of Houston claims it incurred $4,184.00 in fees and $2,359.10 in disbursements. Having carefully reviewed the fees and disbursements, I find that the following fees would have been incurred by the Bank of Houston in conducting the foreclosure sale, even if Mr. Daniels had not filed this second bankruptcy petition:

| | |
|---|---:|
| Telephone conference with Cora Wade regarding payoff on loans: | $ 64.00 |
| Attend foreclosure sale in West Plains: 2 hours: | 320.00 |
| Telephone conference regarding foreclosure sale and correspondence to be mailed: ½ hour | 80.00 |
| Telephone conference with Cora regarding status of file and Strategy for obtaining deficiency: ⅓ hour | 53.33 |
| Receipt and review correspondence from Jo Beth Prewitt regarding foreclosure and tractor: .30 hours | 48.00 |
| Discussion of Farm Credit cooperation with liquidation action; Correspondence with Eddie Smith regarding same: .30 hours | 48.00 |

The total reduction in fees totals $613.33, leaving sanctionable fees in the amount of $3,570.67. In addition, the disbursements will be reduced by the following amounts:

| | |
|---|---:|
| Trustee's Fee | $1,080.00 |
| Updated Title Work | 190.00 |
| Affidavit of Publication | 787.00 |

The total reduction in disbursements totals $2,057.00, leaving sanctionable expenses in the amount of $302.10. After these deductions I find that Mr. Daniels will be assessed Rule 9011 sanctions in the total amount of $3,872.77 for his violation of Rule 9011(b)(1) and (2) of the Federal Rules of Bankruptcy Procedure.

The reduction in the sanctionable amount above does not prevent the Bank of Houston from assessing those same fees and expenses against its collateral if the Deed of Trust so provides.

9. *See* Letter dated June 6, 2000.

Based on the above and foregoing, the Clerk of Court shall enter judgment in favor of the Bank of Houston, and against Stephen W. Daniels, in the amount of $3,872.77.

IT IS SO ORDERED.